IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 91-5093

———————————


DAVID LEE HOLLAND,

Petitioner-Appellant,


VERSUS

JAMES A. COLLINS,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.


————————————————

Appeal from the United States District Court
for the Eastern District of Texas

————————————————

(May 22, 1992)

Before POLITZ, Chief Judge, KING and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

David Lee Holland makes application for a certificate of probable cause ("CPC") to appeal the district court's denial of his petition for writ of habeas corpus. On December 17, 1991, without acting on the application for CPC, the panel majority granted Holland's motion for stay of execution "pending the court's en banc decision in Graham v. Collins . . . ." Shortly thereafter, an opinion was issued in Graham. See Graham v. Collins, 950 F.2d 1009 (5th Cir. 1992) (en banc), petition for cert. filed (Mar. 9, 1992)

(No. 91-7580). In light of Graham, and for the other reasons hereinafter expressed, we now deny CPC and vacate the stay of execution.

## I.

Holland was convicted for the capital murder, on July 16, 1985, of two bank employees in the course of committing and attempting to commit bank robbery. The facts and earlier procedural history of the case are set forth in the comprehensive opinion of the Texas Court of Criminal Appeals. See Holland v. State, 761 S.W.2d 307 (Tex. Crim. App. 1988), cert. denied, 489 U.S. 1091 (1989). Holland filed a state habeas petition with the court of criminal appeals, which denied all relief. See Ex parte Holland, No. 70,970 (Tex. Crim. App. Oct. 16, 1991). Holland filed his first federal habeas petition on December 11, 1991.

In a lengthy memorandum and order, the district court on December 17, 1991, denied Holland's motion for stay of execution, dismissed his habeas petition, and denied CPC. Also on December 17, Holland filed a motion for stay of execution and application for CPC with this court. That same day the panel majority, without taking action on the application for CPC, granted the stay. Holland v. Collins, 950 F.2d 169 (5th Cir. 1991) (per curiam).

In his application for CPC, Holland presents two issues. First, he asserts that mitigating evidence of his positive character traits required an additional instruction to the jury

2

under <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989). Second, he contends that a confession was obtained from him in violation of, <u>inter alia</u>, <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

## II.

### A.

Holland presented evidence of positive character traits, including a good work history, honesty, and courtesy. Other evidence indicated that he was remorseful for the murder of which he was convicted. Holland's attorney requested that additional instructions be given to the jury in order to cure what Holland claims is a constitutional defect in the Texas capital sentencing statute, Tex. Code Crim. P. art. 37.071,[1] as it existed at the time of his conviction.

Specifically, Holland claims that without such instructions, the jury was unable to give full effect to Holland's mitigating evidence, as the evidence had value for Holland outside the second special issue regarding future dangerousness. Thus, Holland argues that a "rational juror could have concluded that, even if likely to be dangerous in the future, David Holland nevertheless deserved to

---

[1] Art. 37.071(b) reads in relevant part as follows:

On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; [and]

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. . . .

3

live because of his long productive life of good deeds, loving family and caring and respectful friends."

Holland also claims that the failure to define certain terms in the second punishment question rendered such mitigating evidence irrelevant. That is, he asserts that, without some standard to guide the jury's deliberations, the standard of proof for "future dangerousness" is so uncertain that a small amount of evidence will support an affirmative answer to the second jury interrogatory and that such evidence is not subject to being offset by mitigating evidence.

As the state notes, however, all that is required is that the jury be permitted to consider the mitigating evidence and give it effect. As we stated in Graham, where the major thrust of a defendant's mitigating evidence can be considered by the jury, there is no need for additional jury instructions. Graham, 950 F.2d at 1026-30. "That is particularly appropriate in a case such as this, where there is no {major thrustz of any of the mitigating evidence which is not relevant to support a negative answer to the second special issue . . . ." Id. at 1027.

The mitigating evidence presented by Holland is the same type of evidence that we determined in Graham to be sufficiently cognizable in the jury's consideration of the second jury interrogatory. As in Graham, Holland's evidence of positive attributes would have indicated to the jury that the crime was aberrational and that he would not be a continuing threat to society. As we observed in Graham,

4

this sort of evidence is different in kind from that involved in <u>Penry</u>, as its relevance to each of the special issues, and particularly the second, is entirely in the direction of a negative answer, and it has no tendency to reduce culpability for the particular crime charged in any way not encompassed within one or more of the special issues. Unlike <u>Penry</u> type disability evidence, which can reduce culpability where it is inferred that the crime is attributable to the disability while other similar offenders have no such "excuse," good character evidence provides no variety of "excuse." Further, absent some unusual indication of an essentially <u>permanent</u> adverse <u>change</u> in character (e.g., brain damage), to the extent that the testimony is convincing that the defendant's general character is indeed good it will also, to essentially the same extent, be convincing that he will not continue to be a threat to society.

<u>Id.</u> at 1033.

Important to the <u>Graham</u> analysis is that no additional jury instruction is required "where no major mitigating thrust of the evidence is substantially beyond the scope of all the special issues." <u>Id.</u> at 1027. Thus, the jury was able adequately to consider Holland's mitigating evidence under the second special issue even if, arguably, such evidence had <u>some</u> mitigating relevance <u>beyond</u> the scope of the Texas special issues. Similarly, we noted in <u>Graham</u> that

it appears to us that the principal mitigating thrust of all this evidence is to suggest that the [murder was] aberrational and atypical of Graham's true character and that he thus had potential for rehabilitation and would not be a continuing threat to society. As such, the mitigating force of this evidence can adequately be given effect under the second special issue.

<u>Id.</u> at 1032.

B.

The above-discussed evidence is all the evidence that, prior

5

to Graham, Holland claimed was mitigating.  Now, in a post-Graham brief requested by the court, he asserts, as mitigating evidence, the fact that he arguably suffers from antisocial personality disorder (APD).  At the punishment phase, the state sought to establish that Holland suffers from APD and used it to support an affirmative answer to the issue on future dangerousness.  Holland, on the other hand, argued to the jury that he did not suffer at all from APD.

Because of this diametric reversal of position, Holland is raising an argument for the first time on appeal, a tactic condemned by, e.g., Buxton v. Lynaugh, 879 F.2d 140, 148 (5th Cir. 1989), cert. denied, 110 S. Ct. 3295 (1990).  Particularly in view of the fact that, prior to the filing of this latest brief, Holland always has contended that the diagnosis of APD was erroneous, he cannot, in the light of an unfavorable decision in Graham, now make an about-face and attempt, for the first time on appeal,[2] to present APD as mitigating evidence of the sort that is cognizable under Penry.

IV.

As the only other issue presented in his application for CPC, Holland argues that the state secured a confession from him in the absence of a valid waiver of his right to remain silent.  We find this issue to be without merit and adopt the explanation set forth

---

[2]     Holland did not even raise the issue regarding APD in his application for CPC but, instead, waited until his execution had been stayed and he had been given an opportunity to file a post-Graham brief.

in part VI of the dissenting opinion to the panel majority's order granting stay.  See Holland v. Collins, 950 F.2d at 172-73 (Smith, J., dissenting).

## III.

In light of Graham, Holland has failed to make a "substantial showing of the denial of a federal right."  Barefoot v. Estelle, 463 U.S. 880, 893 (1983).  He has not "demonstrate[d] that the issues are subject to debate among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are worthy of encouragement to proceed further."  Byrne v. Butler, 845 F.2d 501, 505 (5th Cir. 1988) (citing Barefoot, 463 U.S. at 893 n.4).  Accordingly, his application for CPC must be, and is hereby, DENIED.  The stay of execution previously entered by this court is hereby VACATED.