**Patrick F. ROGERS**

v.

**DIRECTOR, TDCJ–ID.**

No. 1:92–CV–0052.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 7, 1994.

Michael V. Powell, A. Darby Dickerson, William Baylor Steele, III, and Susan L. Karamanian, Locke, Purnell Rain & Harrell, Dallas, TX, for petitioner.

Andrea March, Asst. Atty. Gen., Austin, TX, for respondent.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Petitioner Patrick F. Rogers received the death penalty for the murder of police officer David Roberts. Rogers is now an inmate at the Ellis I unit of the Texas Department of Criminal Justice, Institutional Division. Proceeding *in forma pauperis,* he filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### FACTS

On September 21, 1985, Rogers and his companion Willis Cooper drove to Paris, Texas, from Oklahoma in a stolen blue Cutlass Oldsmobile. They asked a patron of a car wash where they could purchase two handguns. Receiving no assistance, Rogers and Cooper drove to a pawn shop and stole a

used Smith & Wesson .38 handgun from a display case.

Less than an hour later, Rogers and Cooper robbed a Braum's Ice Cream store using a .38 pistol. The store manager called the police describing Rogers, Cooper, and the blue Cutlass. Later that day, police officer David Roberts attempted to pull Rogers and Cooper over. The evidence at trial indicated that Rogers shot Officer Roberts six times with a .38 revolver. The officer's handgun was in its holster and Roberts was talking on the car radio at the time he was killed.

Rogers and Cooper drove to the home of C.C. Cooper and first forced Cooper to drive them in his pickup, and then Rogers took over as driver. The three came upon a police car on a dirt road. The two officers in the unit drew their handguns and shot at Cooper's pickup, hitting the radiator. Rogers then drove the vehicle into a ditch and he and Willis Cooper ran into the woods. Two detectives later apprehended both men in a field.

A grand jury indicted Rogers for the capital murder pursuant to TEX.PENAL CODE § 19.03(a)(1). The state district court ordered Dr. James P. Grigson to perform a psychiatric examination of petitioner Rogers. Dr. Grigson reported that Rogers denied participating in the killing. He concluded that Rogers had a sociopathic personality and would pose a danger to society in the future.

Dr. Gary Byrd, a psychiatrist for the defense, interviewed Rogers on December 23, 1985, and indicated that Rogers described the murder "with just kind of a silly grin this almost bizarre tale which was, at least to me, pretty gruesome at points." Dr. Byrd also related that Rogers had a history of delinquency and PCP use but declined to assert that Rogers was under the effects of PCP at the time he killed Roberts.

After a three-day trial, the jury returned a guilty verdict. During the punishment phase, the jury answered "yes" to the two applicable special issues found in TEX.CRIM. PROC.CODE ANN. (Vernon 1985), art. 37.071, and sentenced Rogers to death.

On direct appeal, the Texas Court of Criminal Appeals affirmed Rogers' conviction. *Rogers v. State,* 774 S.W.2d 247 (Tex.Crim. App.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989). Rogers filed one application for state writ of habeas corpus. This application was denied *en banc* by the Texas Court of Criminal Appeals. *Ex parte Rogers,* 819 S.W.2d 533 (Tex.Crim.App. 1991).

Rogers is now bringing his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts 29 separate points of alleged error in the proceedings that led to his conviction. Although these errors could be grouped into fewer than ten groups, this court will review each point individually in light of the seriousness of the crime and the punishment assessed.

## ANALYSIS

### 1. *Former Texas Capital Sentencing*

The Supreme Court decision in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) resulted in a change to article 37.071 of the Texas Code of Criminal Procedure. Rogers was sentenced under the former article 37.071 which asked the jury that is determining the punishment of a defendant found guilty of murder to answer the following questions:

1. Was the conduct of the defendant that caused the death of the deceased committed deliberately and with reasonable expectation that the death of the deceased would result?

2. Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

The new article 37.071 allows the jury to consider mitigating evidence in assessing if a reasonable doubt exists concerning the punishment of the defendant.

Rogers asserts the jury was not allowed to consider the following mitigating factors: (1) youth, (2) positive character traits, (3) history of drug abuse, and (4) intoxication on PCP at the time of the offense. These will be considered in the order listed.

### i. Age

■ Rogers was twenty-one at the time of the murder. Rogers' trial counsel did not urge youth as a mitigating factor or request a jury instruction on youth as mitigation. One witness, however, did refer to Rogers as "young."

The Fifth Circuit has rejected the claim that former article 37.071 did not allow youthfulness to be considered as mitigation. *Graham v. Collins*, 950 F.2d 1009 (5th Cir. 1992) (*en banc*).[1] *Graham* relied on the Supreme Court's decision in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), which held that the jury in considering the second issue may consider "the age of the defendant." *See Graham*, 950 F.2d at 1030.

Rogers relies on the earlier panel opinion in *Graham*, that allowed a special instruction was necessary to consider the mitigation of youth. *Graham v. Collins*, 896 F.2d 893 (5th Cir.1990). This argument is not persuasive. Even the earlier *Graham* opinion states that "a jury sentencing a capital defendant *who provides evidence* about his character, his background, or the circumstances of the offense that is relevant to personal culpability beyond the scope of the statutory questions must receive instructions that allow the jury to give effect to such evidence." *Id.* at 896 (emphasis added). Rogers never asserted any such evidence.

In order for youth to be a mitigating factor, there must be evidence that shows transitory conditions, e.g., youth and a crime spree that was not typical of the defendant's personality. It is a *mitigating* factor because it indicates the defendant would out-

grow his immaturity and, in accordance with the second issue of the Texas statute, would not pose a continuing threat to society. *See e.g., Graham*, 950 F.2d at 1030 n. 25. No such evidence was introduced here.[2]

The petitioner, in his Motion to Stay, asserted the outcome of the *Graham* decision will impact his own proceedings. This court does not agree. The Supreme Court has considered this same claim twice since petitioner's pleadings. In *Graham v. Collins*, the Court held that the petitioner was requesting a "fourth special issue be put to the jury." *Id.* 506 U.S. at ——, 113 S.Ct. at 902. This request for a new rule is violative of the principles of *Teague*. The Court in *Johnson v. Texas* reviewed the same claim of youth as mitigation without the constraints applied to habeas proceedings by *Teague*. *Johnson v. Texas*, 509 U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). The *Johnson* decision reinforced the Fifth Circuit's *Graham* holding that "the ill effects of youth ... are subject to change and, as a result, are readily comprehended as a mitigating factor in consideration of the second special issue." *Id.*, —— U.S. —— at ——, 113 S.Ct. at 2671.

Thus, petitioner's claim is without merit. Furthermore, petitioner is requesting a "new rule" which would be barred by *Teague*.

### ii. Positive Character Traits

Rogers' parents testified at the guilt stage of the trial. Rogers' mother, Patricia, testified that Patrick was courteous, polite, and helped around the house. Rogers' father, Paul, testified that Patrick came from a family environment and he was good in sports. Paul also testified he sent Patrick to Man-

---

**1.** The Supreme Court affirmed the opinion of the Fifth Circuit on the ground that petitioner was requesting a "new rule" which is barred by principles of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Graham v. Collins*, 506 U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

**2.** In *Wilkerson v. Collins*, the Fifth Circuit discussed the need for such evidence:

In *De Luna v. Lynaugh*, 890 F.2d 720, 722 (5th Cir.1989), we affirmed the denial of habeas corpus relief to a defendant who, at trial, had offered no evidence arguably within *Penry*. The defendant, De Luna, 21 years old at the

time of the crime, made no claim of childhood abuse or substance use which significantly reduced his mental capacities nor did he offer evidence of mental retardation. We apply the same reasoning here. A defendant cannot claim factors exist in his case which are not covered by the Texas special issues unless he has offered proof of those factors at trial. To demonstrate that the trial court committed constitutional error in conducting his trial a defendant must afford that court the right to consider and rule on such proof.
*Wilkerson v. Collins*, 950 F.2d 1054, 1061 (5th Cir.1992).

power training after Patrick dropped out of school. Rogers' counsel did not request an instruction on positive character traits as mitigation.

The Fifth Circuit has recently considered the effect of positive character traits in relation to the former article 37.071. *Holland v. Collins,* 962 F.2d 417 (5th Cir.1992). The Court rejected the claim that the former article 37.071 did not allow a vehicle for presenting evidence of good character traits as mitigation. In fact, the Fifth Circuit specifically noted in *Graham v. Collins,* 950 F.2d at 1032–33, that the former article 37.071 allows a vehicle in which the jury can consider good character traits in mitigation of punishment. The jury here was permitted to consider evidence of Rogers' good character traits within the context of the special issues of former article 37.071. Rogers' assertion is without merit.

### iii. History of Drug Abuse

■ Dr. Byrd and Dr. Grigson both testified that Rogers claimed to have a long history of drug abuse. Rogers himself testified that he used PCP nearly every day. Dr. Grigson related that a person on PCP could act irrationally but could not be made to commit a crime. Dr. Byrd testified that the effects of PCP wore off after a period of 36 hours.

Rogers alleges in his petition that the jury was not allowed to consider his diminished capacity in mitigation. The State argues diminished capacity based upon long term drug use was not before the jury and this court agrees. No witness testified that PCP or the other drugs Rogers used in the past had a diminishing effect on his capacity. In order for a petitioner to prevail on a *Penry* claim he must demonstrate that the mitigation evidence was before the jury or offered and rejected by the trial court. *See Wilkerson v. Collins,* 950 F.2d 1054, 1061 (5th Cir.1992). Rogers cannot make such a demonstration and thus this claim must fail.

### iv. PCP Intoxication

Rogers claims that he and his companion smoked $100 of PCP in marijuana cigarettes the night before the murder. Rogers received a jury instruction on temporary insanity due to intoxication. (Tr. 173).

The Fifth Circuit recently restated that voluntary intoxication is not a basis for a claim under *Penry.* *Nethery v. Collins,* 993 F.2d 1154 (5th Cir.1993); *Cordova v. Collins,* 953 F.2d 167 (5th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992). Nevertheless, the jury at Rogers' trial was allowed to consider the effects of the PCP in relation to petitioner's state of mind at the time of the crime. His claim is without merit.

### 2. Temporary Insanity Instruction

■ Rogers asserts the temporary insanity instruction given by the trial court did not allow the jury to fully consider the effect of voluntary intoxication in mitigation of punishment. The trial court gave an instruction, however, which specifically allowed what the petitioner asked for, i.e., mitigation consideration. Petitioner's trial counsel did not object to the instruction.

Petitioner was not even necessarily entitled to an instruction. As the court in *Cordova* explained, voluntary intoxication is not the "kind of 'uniquely severe permanent handicap with which the defendant was burdened through no fault of his own' that requires a special instruction." *Cordova v. Collins,* 953 F.2d at 170 *quoting Graham v. Collins,* 950 F.2d at 1029. This claim is without merit.

### 3. Jury Instruction did not Allow Guidance on Mitigation

■ Rogers contends that the jury instruction was void of guidance as to how to consider mitigation evidence. This is based upon a lack of definition of such words as "deliberate," "intentional," and "probability." Once again, Rogers' trial counsel did not request such instructions.

In reviewing the Texas sentencing scheme the Supreme Court faced the question of requiring extensive definitions of the terms used. The Court concluded that "the issues posed in the sentencing proceedings have a common-sense core of meaning and that criminal juries should be capable of understanding them." *Jurek v. Texas,* 428 U.S. at

278–79, 96 S.Ct. at 2959–60 (White, J., concurring). The Fifth Circuit has come to the same conclusion concerning the terms Rogers believes require definitions. *Milton v. Procunier,* 744 F.2d 1091, 1096 (5th Cir. 1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). This claim is without merit.

### 4. *Chilling Effect of the Texas Sentencing Statute*

 Rogers contends the chilling effect of the former Texas Sentencing Statute prevented his trial counsel from presenting available mitigation evidence. Rogers asserts that this is a violation of the Sixth, Eight, and Fourteenth Amendments.

The evidence consisted of an abusive father, a criminally active brother and good personal traits of petitioner while he was in elementary school (regularly turned in homework and stopped fights). Rogers does not allege that either the state prevented him from presenting or that the trial court restricted his ability to present this mitigating evidence.

Rogers cites *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), as mandating the consideration of defendants' character traits in assessing capital punishment. In Rogers' trial, his character traits were considered. Rogers' mother testified that he was a good boy who she had to turn in for theft of a motor vehicle. Rogers' father testified that Patrick came from a good home but got in trouble with drugs. Numerous Oklahoma citizens testified to Rogers' propensity towards crime and responsibility avoidance.

The Fifth Circuit has stated:

> It is a commonly accepted truism that, just as none of us is all good, so also none of us—not even those who will probably commit criminal acts of violence constituting a continuing threat to society—is all bad. The number of capital crime defendants who have nothing in their background which might tend to reflect a positive character trait—who have never performed any voluntary service or exhibited any kindness to others or supported their family, to mention but three possible examples—must be minuscule at most. And this, of course, has been obvious all along. So too has it always been obvious that many defendants—because of some transitory condition such as relative youth or emotional distress incident to one of life's many crises to which all are subject such as divorce or loss of a loved one or a job—may, when they committed an offense, have been less able than most not so afflicted to control themselves and evaluate their conduct and its consequences. If *Penry* is read broadly, then in none of these cases can the Texas statutory scheme pass muster.... We doubt the Supreme Court intended this.

*Graham v. Collins,* 950 F.2d at 1027. Rogers' contention that the former Texas Sentencing Statute had a "chilling effect" on his presentation of mitigation evidence will not afford him relief in federal habeas corpus proceedings. *See May v. Collins,* 948 F.2d 162, 168 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992). This claim is without merit.

### 5. *Trial Counsel's Failure to Investigate*

 Rogers asserts trial counsel was ineffective because he did not undertake a substantial investigation into Rogers' background in order to uncover additional mitigation evidence to present.

In order for Rogers to show trial counsel was ineffective he must demonstrate that trial counsel's representation fell below a reasonable standard of performance and that this deficient performance resulted in prejudice to the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Rogers' lawyer presented evidence of Rogers' upbringing and his past use of drugs. The fact that counsel failed to bring in evidence that Rogers' brother had been in trouble with the law or that Rogers turned in his homework when he was in elementary school may be attributable to trial strategy. Sound strategic decision will not form the basis of an ineffective assistance of counsel claim. *Strickland v. Washington,* 466 U.S. at 687–89, 104 S.Ct. at 2064–65. Rogers' lawyer performed a competent background investigation and used the

assistance of a psychiatrist, Dr. Byrd, in presenting these findings to the jury. There is no indication in the record that trial counsel's performance was deficient or any prejudice resulted from any alleged deficient performance. This claim is without merit.

### 6. *Jury Oath*

■ Rogers alleges the jurors were improperly required to take the following oath:

> The mandatory penalty of death or imprisonment for life in the event the defendant is convicted of capital punishment will not affect your deliberations on any issue of fact in this case.

This oath is pursuant to § 12.31(b) of the Texas Penal Code. Rogers asserts this oath prevented the jury from considering the mitigation evidence presented. He believes that because the trial court failed to give certain instructions, he was mandatorily condemned to death.

To support his argument, Rogers relies on *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Rogers' interpretation of the case would require the trial court to give clarifications to the oath such as the oath is not binding, that it could not be used to disqualify them from sitting on the jury, or that it should not affect their deliberations on the special issues during the sentencing phase. The actual holding in *Adams* is void of such requirements and this court does not construe the holding as making such instructions necessary. The oath was administered properly by the trial court here and this claim is without merit.

### 7. *Texas Capital Sentencing Statute*

■ Rogers asserts that the former Texas Capital Sentencing Statute is unconstitutional on its face because it does not require an instruction on the consideration of mitigation evidence.

The former Texas Capital Sentencing Statute was expressly upheld in *Jurek* because it allowed defendants to present mitigation evidence and the jury to consider it. *Jurek v. Texas*, 428 U.S. at 271, 96 S.Ct. at 2956. Rogers presented such evidence in his trial and the jury was allowed to consider it.

Because this evidence was presented before the jury no further instruction was necessary. *Franklin v. Lynaugh*, 487 U.S. 164, 185, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring). This claim is without merit.

### 8. *Future Dangerousness*

■ The former, and the present, Texas Capital Sentencing Statute allows the jury to consider "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX.CRIM.PROC.CODE ANN. § 37.071 2(b)(1) (Vernon Supp.1993).

Rogers asserts this allows for the punishment of crimes not yet committed. He misconstrues why he is to be punished. The jury found Rogers guilty of murdering a police officer. That is the crime for which he is to be punished and none other.

Future criminal conduct cannot be predicted with any degree of certainty. The state does not argue otherwise. What can be assessed is a person's future propensity towards a certain type of behavior based upon known past behavior. In Rogers' case, the jury considered his past conduct in relation to the murder he committed. By reviewing these known variables, the jury found, beyond a reasonable doubt, that there is a *probability* that Rogers would be a continuing threat to society. This is not the assessment of punishment. It is a conclusion that Rogers is dangerous based upon his past conduct and present conviction. It does not purport to punish for future crimes. The Fifth Circuit has expressly upheld the Texas future dangerousness inquiry based upon the known variables of the present offense. *O'Bryan v. Estelle*, 714 F.2d 365 (5th Cir. 1983), *cert. denied sub. nom. O'Bryan v. McKaskle*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). This claim is without merit.

### 9. *Parole Eligibility Considerations*

■ Rogers asserts the jury was not allowed to consider parole eligibility in mitigation of punishment. He believes this resulted in the jury being "free to apply the popular notion that defendants sentenced to con-

finement are quickly released back into society." This is a conclusory remark that will not afford petitioner relief in federal habeas corpus proceedings. Additionally, the state is not required to instruct a jury on parole considerations to fulfill constitutional mandates. *O'Bryan v. Estelle,* 714 F.2d 365, 388–89 (5th Cir.1983), *cert. denied sub. nom. O'Bryan v. McKaskle,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). This claim is without merit.

### 10. *Argument against the Death Penalty*

■ In a fragmented argument, Rogers asserts that trial counsel told prospective jurors during voir dire that he would argue against the death penalty if the punishment phase was reached. Rogers next asserts that trial counsel was denied the opportunity to do so because the trial court did not allow counsel to argue that a PCP user cannot be deterred from crime due to a lack of control.

The respective parties are allowed to make an argument for or against the "sentence of death" pursuant to Tex.Crim.Proc.Code Ann. § 37.071 2(a) (Vernon Supp.1993). Rogers alleges the trial court's curbing of counsel's argument amounted to a denial of this statutory right. Rogers asks this court to read the statute so broadly as to permit general arguments concerning the deterrent effect of the death penalty on certain intoxicated defendants. This is not the intent of art. 37.071(a).

The article allows the introduction of any matter that the court deems relevant to sentencing. The State of Texas does not require capital punishment for the deterrent effect on other criminals. Therefore, any argument concerning deterrent effect is not material to the sentence in a specific capital trial in Texas until the legislature mandates otherwise. The evidence counsel attempted to introduce did not bear upon the specific crime or circumstances that are incident to the sentence under consideration. Thus, the exclusion of such evidence is not constitutional error. *Lockett v. Ohio,* 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 2965 n. 12, 57 L.Ed.2d 973 (1978). This claim is without merit.

### 11. *Dr. Grigson's Testimony*

Dr. James Grigson was appointed by the trial court to conduct a psychiatric interview of Rogers in order to determine his sanity, competency, mental retardation and future dangerousness. Trial counsel advised Rogers not to talk to any of the doctors about the specific crime, but to cooperate otherwise. Rogers asserts, however, that his lawyer did not have specific notice of Dr. Grigson's examination or that Dr. Grigson was appointed to assess Rogers' future dangerousness.

■ The state cannot compel a defendant to submit to a psychiatric examination for the purpose of soliciting evidence concerning future dangerousness. Psychiatric interviews conducted without proper *Miranda* warnings or without notice to counsel violate the Fifth and the Sixth Amendments respectively. *Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989).

> Once a capital defendant is formally charged, the Sixth Amendment right to counsel precludes such an examination without first notifying counsel that the 'psychiatric examination [will] encompass the issue of their client's future dangerousness.'

*Powell,* 492 U.S. at 681, 109 S.Ct. at 3148, *quoting Estelle v. Smith,* 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359 (1981). The holding in *Estelle v. Smith* is limited to those defendants "who neither initiate ... a psychiatric evaluation nor attempt ... to introduce any psychiatric evidence." *Id.* at 468, 101 S.Ct. at 1876. In this case Rogers requested the appointment of a psychiatrist to determine competency and sanity prior to Dr. Grigson's examination. On October 23, 1985, Dr. Grigson met with Rogers, administered the *Miranda* warnings prior to the interview, and read Rogers the trial court's order. The trial court made trial counsel aware of the pending examination at a pretrial hearing on October 18, 1985. The holding in *Smith* is therefore not applicable to Rogers' Sixth Amendment claim.

■ Trial counsel also brought up the insanity issue prior to the examination by Dr. Grigson. Thus, Rogers waived any Fifth Amendment right against self-incrimination

concerning the psychiatric testimony of Dr. Grigson. *See Granviel v. Lynaugh,* 881 F.2d 185, 190 (5th Cir.1989). Furthermore, trial counsel did not object to Dr. Grigson's testimony at trial and the trial court found this ground procedurally barred from review on appeal. The Texas Court of Criminal Appeals adopted this finding as being fairly supported by the record. *Ex parte Rogers,* 819 S.W.2d at 534. Thus, this ground is procedurally barred from review in federal habeas corpus proceedings. This ground is without merit.

### 12. *Dr. Grigson and the Effective Assistance of Counsel*

Rogers alleged in the previous ground for review that his trial counsel did not receive notice of the pending examination on future dangerousness. On this ground, Rogers alleged his trial counsel was ineffective because he allowed Dr. Grigson to examine Rogers after receiving notice of a pending future dangerousness assessment. Rogers seems to want to argue both sides of the dispute to his advantage without committing to the totality of the facts in the record.

▮ Rogers is not entitled to have counsel present during a psychiatric evaluation. He was allowed to confer with his trial counsel prior to the examination and this is all that is required. *United States v. Cohen,* 530 F.2d 43, 48 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976).

▮ Rogers is not entitled to refuse a psychiatric evaluation once he has raised the issue of insanity. *Granviel v. Lynaugh, supra.* The state is allowed to rebut defense psychiatric testimony with the results of court ordered state psychiatric examination testimony. *Schneider v. Lynaugh,* 835 F.2d 570, 576 (5th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). Thus, Dr. Grigson's testimony was properly used to rebut the testimony of Dr. Byrd. Rogers has not shown trial counsel's performance was deficient or that prejudice resulted. *Washington v. Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This claim must fail.

### 13. *Dr. Griffith's Testimony*

▮ When Dr. Clay Griffith was called as a psychiatric expert for the state, trial counsel objected to the testimony. The trial court held a hearing outside the presence of the jury and the state agreed not to question Dr. Griffith concerning any conclusions or other results of Rogers' examination.

The state withdrew Dr. Griffith as a witness in the guilt stage of the trial but reserved the right to question him concerning hypothetical situations during the punishment stage. At that time, the state did question Dr. Griffith about the effects of PCP, different personality disorders, and the predictability of future behavior. Trial counsel did not object to this testimony.

No evidence concerning Dr. Griffith's examination of Rogers was ever before the jury. Where no statement made to the psychiatrist is made the subject of his testimony, either directly or indirectly, there is no factual basis on which to predicate a Fifth or Sixth Amendment Claim. *Williams v. Lynaugh,* 809 F.2d 1063, 1068 (5th Cir.1987). *See Estelle v. Smith,* 451 U.S. at 464–65, 101 S.Ct. at 1873–74. Trial counsel was not ineffective for failing to object to this testimony. This claim is without merit.

### 14. *False Opinion Evidence*

▮ Rogers asserts both Doctors Grigson and Griffith testified that long-term future dangerousness can be predicted with certainty. Rogers believes this is novel scientific evidence and should not be allowed.

Expert opinion evidence on the issue of future dangerousness may be presented to a jury. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Dr. Byrd first testified as an expert witness for the defense. Both Dr. Grigson and Dr. Griffith then testified as expert witnesses for the state. As such, the opinion evidence offered was in rebuttal to the defense theory of temporary drug induced insanity. This claim is without merit.

### 15. *Psychiatric Assistance*

▮ Rogers alleges he was denied competent psychiatric assistance. He relies on

*Ake v. Oklahoma,* 470 U.S. 68, 84, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985), as requiring a high degree of competence on the part of psychiatric assistance. Specifically, Rogers complains about the alleged shortfalls of Dr. Byrd.

Dr. Grigson was a court-appointed psychiatrist. His opinion and testimony were available to both sides. *Granviel v. Lynaugh,* 881 F.2d 185, 191–92 (5th Cir.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990). Thus, both Dr. Grigson and Dr. Byrd were available to assist Rogers' defense. Rogers does not assert Dr. Grigson was incompetent in his psychiatric evaluation techniques.

A defendant is not entitled to a psychiatrist who will testify according to his wishes. *Martin v. Wainwright,* 770 F.2d 918, 935 (11th Cir.1985), *opinion modified and reh'g denied,* 781 F.2d 185 (1986), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). Doctors Byrd and Grigson were certified medical doctors who specialized in psychiatry. Both had over twenty years of experience in the field of psychiatry. To hold these experts to the degree of care Rogers suggests is necessary would be beyond that required by the Constitution. Rogers is not entitled to a perfect trial where every piece of evidence that could possibly be adduced is presented on his behalf. This claim is without merit.

16. *Alleged Perjured Testimony of Billy Brakebill*

 Billy Wayne Brakebill shared a cell with Rogers prior to the trial. Rogers told Brakebill the facts of the murder. Brakebill then approached a detective and offered to testify against Rogers in exchange for a reduced sentence on a theft charge. Although there is no evidence that Brakebill conferred with any state officials before Rogers relayed the story, Rogers asserts:

 i. before Brakebill testified, he had made a deal with the state concerning a pending Illinois conviction;

 ii. Brakebill perjured himself on the stand; and

 iii. the prosecution failed to correct his testimony.

There is no evidence in the record that such assertion is in fact true. The state did not discuss any deal with Brakebill other than the one presented at trial. Furthermore, the state provided an affidavit from Brakebill's attorney which demonstrates that Brakebill made no deal on the Illinois charge prior to testifying.

Rogers' allegations are conclusory and are not supported by the record. As such, Rogers failed to demonstrate that Brakebill presented perjured testimony. Rogers also fails to demonstrate a constitutional violation that implicates the decisions in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This claim is without merit.

17. *Brakebill's Testimony Exceeded the Scope of Proper Rebuttal*

Rogers asserts that Billy Brakebill's testimony referred to items outside the scope of rebuttal and that Billy was an unreliable witness. Brakebill was called after Rogers testified in the punishment phase of the trial. Rogers stated that he was on PCP at the time of the murder and did not remember shooting the police officer. Brakebill testified that Rogers bragged about the murder in great detail.

Brakebill's testimony was proper rebuttal. There is no indication in the record that his testimony was unreliable or that it extended beyond the scope of Rogers' testimony. It was properly placed before the jury. As such, the jury could determine the credibility of the testimony given by Rogers, Brakebill, and the rest of the witnesses. This claim is without merit.

18. *Billy Wayne Brakebill as Agent*

 Rogers asserts that Billy Brakebill was acting as an agent for the state when he was in the Lamar County Jail. This is based upon affidavits of former jailers at Lamar County who thought it unusual that Brakebill was placed in the cell with a capital murder defendant.

There were two other people in the cell with Rogers—Brakebill and Derrial Dixon. Both Dixon and Brakebill were being held for theft. Rogers' accusation that Brakebill was a planted government agent is less than convincing. Rather, Billy Brakebill is a person who knew the ways of the criminal justice system. When Rogers gave Brakebill the opportunity to lessen his own burden toward society he jumped at the chance for a "deal." Rogers cannot show that Brakebill was in fact a state agent. His claim must therefore fail. *See e.g., Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). This claim is without merit.

### 19. *Ineffective Assistance by Trial Counsel*

Rogers alleges that trial counsel was ineffective for a multitude of reasons. In order to prevail on an ineffective assistance of counsel claim the defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Washington v. Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Furthermore, the petitioner must demonstrate that counsel's errors resulted in a fundamentally unfair or unreliable sentence. *Lockhart v. Fretwell,* 506 U.S. ——, ——, 113 S.Ct. 838, 841, 122 L.Ed.2d 180 (1993). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* 466 U.S. at 690, 104 S.Ct. at 2066.

Rogers' allegations of wrongdoing by counsel are either conclusory allegations unsupported by the record or based upon grounds found to be without merit in other parts of this opinion. Rogers has not shown counsel's performance was deficient or that any prejudice resulted from the alleged deficient performance. Because Rogers has not met his burden of proof, the claim must fail.

### 20. *Ineffective Assistance by Appellate Counsel*

■ Rogers alleged that his appellate counsel was also ineffective because he did not bring forth certain claims that might have been meritorious upon direct appeal. The Texas Court of Criminal Appeals, upon state habeas corpus review, found the actual claims made by appointed counsel to be without merit under both state and federal constitutional law. Rogers is unable to demonstrate here that had his counsel brought the proposed multitude of claims, the results would be different. Thus, Rogers cannot demonstrate the required prejudice mandated by *Strickland. Id.* This claim is without merit.

### 21. *Indictment versus Jury Charge*

■ Rogers' indictment charged him with "knowingly *and* intentionally" committing the murder of Officer Rogers. The jury charge allowed a conviction based upon "knowingly *or* intentionally" murdering Roberts. According to Rogers, this difference resulted in his conviction based upon a lower standard of culpability.

The State of Texas allows the prosecution to indict in the conjunctive and charge in the disjunctive. *Garrett v. State,* 682 S.W.2d 301, 309 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). This precludes Rogers' claim from review based upon adequate and independent state grounds. In addition, the difference in the two documents did not materially alter the theory of the crime charged in the indictment and habeas relief is not warranted. This claim is without merit.

### 22. *Voir Dire*

Rogers alleged that five jurors were improperly excluded and one juror was improperly seated. Prospective jurors Casey, Griffin, and Ross were excused for cause. All three expressed their inability to assess the death penalty under any circumstance. Prospective juror Haskins was excused because she had commitments that required her to be with her children. Prospective juror Scott was excused after she expressed doubt that she could assess the minimum punishment of five years for the murder of a police officer.

■ Juror Alston was seated after he agreed with the defense that they would have to prove to him that Rogers was not guilty of the crime. Rogers asserts this resulted in Alston being improperly seated. If this

statement was taken in a vacuum, Rogers may have a good claim. But, the response that defense counsel elicited was subsequent to Alston stating that (1) he believed Rogers was innocent at the point of jury selection, (2) he would have to listen to the trial evidence, and (3) if the state presented evidence substantial enough to prove Rogers' guilt, he would expect the defense to offer evidence of innocence before he could find Rogers not guilty. This demonstrates that Alston placed the burden of proof upon the state throughout the entire trial. *See Rogers v. State,* 774 S.W.2d at 255–56.

The trial court used the proper standard in rejecting or seating the above mentioned venire members pursuant to *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). This claim is without merit.

### 23. *Impermissible Suggestive Identifications*

■ Rogers asserts several of the eye witnesses to the crime were shown a newspaper photo and were allowed to discuss the crime before a lineup identification. The lineup identification was never introduced at trial. Each witness recounted their in-court identification based upon seeing Rogers the day of the crime.

Furthermore, Rogers has never denied that he shot officer Roberts. Instead, he relied on alleged defects in his background or his voluntary drug use as an excuse for this crime. Therefore, the witnesses' inspection of photograph and discussion among themselves did not lead to the misidentification of Rogers and was not impermissible suggestive. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

In a related claim, Rogers asserts his trial counsel was refused access to the witnesses' statements prior to trial. Rogers' trial counsel, however, did not perfect this issue for appeal. The Texas Court of Criminal Appeals held the matter procedurally barred from review. This effectively foreclosed review of the alleged error in federal habeas corpus review. *Coleman v. Thompson,* 501 U.S. 722, 750–53, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Even if this court were

to disregard the foreclosure, there is no indication in the record the statements were inconsistent with the testimony offered at the pretrial hearing or at trial. Trial counsel was allowed access to the statements at trial and was unable to gain any advantage from their use. This claim is without merit.

### 24. *Unadjudicated Prior Offenses*

■ Rogers claims the state's use of prior unadjudicated offenses, both at the guilt and punishment phases of his trial, amounted to a deprivation of due process. The testimony at the guilt stage showed Rogers had gone on a one-day crime spree during which he killed Officer Roberts. Although this murder was the only crime charged in the indictment, the conduct that lead up to the murder and the subsequent flight from the crime scene is certainly relevant to the guilt of the defendant.

The Fifth Circuit has upheld the introduction of unadjudicated prior offenses at the punishment stage. *Landry v. Lynaugh,* 844 F.2d 1117, 1121 (5th Cir.1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988). The introduction of these offenses serve a legitimate governmental objective in assisting a Texas jury to determine the probability of future conduct based upon past conduct. This claim is without merit.

### 25. *Transfer of Venue*

■ Rogers alleges the transfer of venue from Lamar County to Collin County resulted in a denial of equal protection because Collin County has fewer blacks as a percentage of the population than Lamar County.

Rogers' trial counsel requested a change of venue and the state did not oppose this change. The trial court transferred this action to Collin County in accordance with state law. TEX.CRIM.PROC.CODE ANN. § 31.01 (Vernon 1989).

Two blacks were part of Rogers' venire panel. One of the two was struck for cause. The second black was excluded through the state's use of peremptory challenge. Trial counsel did not object to the venire or the use of the state's peremptory challenge.

Generally, a "state's purposeful or deliberate denial to negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965). ' The state's use of peremptory challenges is subject to the commands of the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). For a *Batson* claim to be timely, the objection must be made before the venire is dismissed and before the trial commences. *United States v. Romero–Reyna*, 867 F.2d 834, 837 (5th Cir.1989).

There was no evidence presented before trial that indicated the change of venue would adversely affect Rogers' equal protection or due process rights. There is no outstanding precedent for requiring a trial court to consider demographic composition *sua sponte* every time a venue change is requested. The Equal Protection Clause does not require exactitude of this nature. There is ample indication in the voir dire that a reasonable jury reflecting the cross-section of the community was seated for Rogers's trial. Although this claim is without merit, failure of trial counsel to object procedurally bars this claim from review in federal habeas corpus proceedings. *Jones v. Butler*, 864 F.2d 348 (5th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).

### 26. *Death Penalty as Cruel and Unusual Punishment*

Rogers asserts the death penalty is cruel and unusual punishment and is therefore unconstitutional under all circumstances. The Supreme Court disagrees. *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931–32, 49 L.Ed.2d 859 (1976).

In a related claim, Rogers asserts the Texas death penalty is applied in a racially discriminatory fashion. Rogers has not asserted any facts to support his claim. In order to prevail, Rogers "must prove that the decision makers in his case acted with discriminatory purpose." ' *McKleskey v. Kemp*, 481 U.S. 279, 290–91, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987). He makes no such claim. This claim is without merit.

### 27. *Prejudicial Photographs*

Rogers asserts the admission of the crime scene and autopsy photographs violated his Fifth, Sixth, and Eighth Amendment rights.

The crime scene photographs depicted the dead officer. The autopsy photographs depicted the officer's wounds. The pictures might be characterized as "bloody and gruesome" but murder is seldom less than bloody and gruesome. The photographs were properly admitted by the trial court and there is no indication of abuse of discretion. *See Brogdon v. Butler*, 824 F.2d 338, 342 (5th Cir.1987), *cert. denied*, 483 U.S. 1040, 108 S.Ct. 13, 97 L.Ed.2d 802 (1987). This claim is without merit.

### 28. *Investigator's "Conflict of Interest"*

Rogers asserts that his court-appointed investigator, John Sands, was laboring under a conflict of interest because Sands' partner, Larry Vandiver, was appointed by the court to be Willis Cooper's investigator. Willis Cooper was Rogers' accomplice. Rogers also complains of his counsel's failure to fire Sands after the conflict of interest became apparent.

There is no basis for either allegation. Cooper did not testify against Rogers. Cooper pleaded guilty and received a life sentence. The allegation that there was a conflict of interest is conclusory and is not supported by the trial record. This claim will not support relief in federal habeas corpus proceedings.

Rogers' conclusory allegations also fail to allege that his counsel's performance was less than reasonable or that the outcome of the trial would have been different if Sands had been fired. Sands carried through with his investigation and no actual conflict of interest resulted. The claim concerning counsel's failure to fire Sands, after the conflict was alleged, is without merit.

### 29. *Prosecutor's Closing Arguments*

Lastly, Rogers asserts the prosecutor's closing arguments violated his Fifth, Sixth, and Fourteenth Amendment rights.

Rogers fails to point to any individual remark that made his trial unfair. Instead, he fragments his argument by pointing to different, isolated remarks made during the final argument regarding the impact of the murder upon Officer Roberts' family and Rogers' personal characteristics.

The Fifth Circuit stated that there is no "cumulative error" rule which allows a federal court to base habeas corpus relief by compounding error to the point of finding sufficient grounds for relief. *Mullen v. Blackburn*, 808 F.2d 1143 (5th Cir.1987). Furthermore, evidence of the impact upon a victim's family is admissible at sentencing. The prosecutor's remarks were therefore proper. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). This claim is without merit.

### Procedural Bar

The state argues that all of Rogers' claims are procedurally barred from review based upon adequate and independent state grounds except for his first claim. This is a correct assessment under *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

This court has reviewed all grounds of procedural and substantive error to prevent any miscarriage of justice. There are no sufficient constitutional infirmities in Rogers' conviction that would require relief pursuant to 28 U.S.C. § 2254.

Rogers has been on Texas Death Row for over eight years. This is not an extensive amount of time as compared to other inmates. This court has done what it can to assure Rogers his constitutional safeguards in relation to his trial. Having found that Patrick Rogers received such safeguards, it is

**ORDERED** that petitioner's request for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED.** Certificate of Probable Cause to appeal pursuant to 28 U.S.C. § 2253 is denied by separate order entered this date. All motions by either party not previously ruled upon are hereby **DENIED.**